UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN SPENCER, et al., Plaintiffs, v. PHARMAVITE LLC, Defendant. | Case No. 26-cv-05135-NW **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** Re: ECF No. 18 |

Plaintiffs Benjamin Spencer, Shaun Pilon, Damany Browne, and Lynn Guenther bring this putative class action on behalf of themselves and consumers in California, New York, and New Jersey, as well as nationwide, who purchased "Nature Made 500 mg Turmeric Capsules." ECF No. 1 ¶¶ 1, 16–24, 77. On July 30, 2026, Defendant, Pharmavite LLC, moved to dismiss Plaintiffs' claims as preempted by the Food, Drug, and Cosmetic Act ("FDCA"), or alternatively to dismiss to the extent Plaintiffs' claims go beyond statements Defendant actually made, and to the extent Plaintiffs seek injunctive relief. *See* ECF No. 18. The Court held a hearing on November 19, 2026. ECF No. 40. For the following reasons, the Court GRANTS IN PART and DENIES IN PART the motion.

## I. BACKGROUND[1]

"Defendant is one of the top [dietary] supplement manufacturers in the United States," and its "Nature Made products are available nationwide in retailers such as BJ's Wholesale Club,

[1] The facts are drawn primarily from Plaintiffs' complaint, the well-pleaded allegations of which the Court takes as true for the purposes of a motion to dismiss. *See, e.g.*, *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court also considers documents properly subject to judicial notice or incorporated by reference in the complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

United States District Court
Northern District of California

Target, Wal-Mart, CVS, Walgreens, and online[.]" ECF No. 1 ¶ 47. This case concerns Nature Made's turmeric-capsule dietary supplement. According to Plaintiffs, "[t]urmeric is one of the world's most widely used supplements and has been taken or consumed around the world for its medical benefits for thousands of years[.]" *Id.* ¶ 2. "The bioactive compound in turmeric is curcumin." *Id.* As relevant here, Plaintiffs allege that "[w]hen absorbed by the body, curcumin provides antioxidant benefits, supports a healthy inflammation response, and improves joint and muscle health, among other benefits." *Id.* On the labelling for its turmeric capsules sold in stores, Defendant represents that its turmeric capsules "provide[] antioxidant benefits." *Id.* ¶ 62; ECF No. 18-2 at 2 (the label at issue).[2] Online, Defendant's website represents that its capsules "provide[] antioxidant activity that helps neutralize free radicals in the body." *Id.* ¶ 63.

But on "its own, the curcumin in turmeric has extremely poor bioavailability due to rapid metabolism and limited absorption." *Id.* ¶ 3. In other words, the "curcumin in turmeric cannot be absorbed by the body effectively" and, consumed in isolation, "will not provide the health benefits curcumin can offer." *Id.* Its absorption is greatly enhanced, however, when taken with certain additives, including "most commonly, piperine, which is found in black pepper." *Id.* ¶ 4. For this reason, dietary supplement makers such as Costco's Kirkland brand, CVS, and Walgreens include black pepper or BioPerine (another additive) in their capsules. *Id.* ¶¶ 72–76. Defendant's turmeric capsules do not include any additive to aid in absorption. *Id.* ¶ 59–70, 72.

Plaintiffs, who purchased Defendant's turmeric capsules at various retail locations, had individualized motivations for their purchases. Plaintiff Spencer "purchased the Turmeric Capsules to alleviate pain associated with past injuries," in reliance on "Nature Made's advertisements that the products he purchased were anti-inflammatory and contained antioxidants." *Id.* ¶ 16. Plaintiff Pilon "purchased the Turmeric Capsules to alleviate pain associated with past injuries, gout and arthritis," based on the same representations. *Id.* ¶ 17.

---

[2] Defendant requests this Court find the label, submitted as exhibit A to its motion, to be incorporated by reference in Plaintiffs' complaint. *See* ECF No. 19 at 3. The Court GRANTS Defendant's request and finds the entire label incorporated by reference. *Khoja*, 899 F.3d at 1002 (incorporation by reference is proper where "the claim necessarily depend[s] on" the document, and prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.").

Plaintiff Browne purchased the turmeric capsules "in reliance on Nature Made's advertisements that the products he purchased would reduce inflammation and provide antioxidants." *Id.* ¶ 18. And Plaintiff Guenther purchased the turmeric capsules "in reliance on Nature Made's advertisements that the products []she purchased would reduce inflammation." *Id.* ¶ 19. Plaintiffs were unaware that Defendant's capsules contained "no absorption-enhancing additive necessary to provide the advertised health benefits," were unaware they therefore "would not provide the stated antioxidant and anti-inflammatory benefits," and "would not have purchased the Turmeric Capsules if that information had been fully disclosed." *Id.* ¶¶ 16–19.

Plaintiffs bring claims under California law (Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; for false advertising, Cal. Bus. & Prof. Code § 17500 *et seq.*; and for violation of the Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1750, *et seq.*), New Jersey law (the New Jersey Consumer Fraud Act (the "NJCFA"), N.J.S.A. § 56:8-1(d)), and New York law (for deceptive acts and practices, N.Y. Gen. Bus. Law § 349; and false advertising, N.Y. Gen. Bus. Law § 350), and for breach of express warranty, breach of the implied warranty of merchantability, and unjust enrichment under unspecified state law. Plaintiffs seek damages as well as injunctive relief enjoining "Defendant from continuing to engage in the wrongful acts and practices alleged herein." *Id.* at 44–45 (Prayer for Relief).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and are therefore insufficient to defeat a motion to dismiss for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

United States District Court
Northern District of California

But Plaintiffs "generally need not plead around affirmative defenses." *Yelp Inc. v. Google LLC*, No. 24-CV-06101-SVK, 2025 WL 1168900, at *5 (N.D. Cal. Apr. 22, 2025) (quoting *Ploof v. Arizona*, No. 22-15061, 2023 WL 2929314, at *1 (9th Cir. Apr. 13, 2023)). Even so, as with other affirmative defenses, preemption may be addressed at the pleading stage if it "is apparent on the face of the complaint." *Lovejoy v. Bank of Am., N.A.*, No. 13-cv-1638-DMR, 2013 WL 3360898, at *6 (N.D. Cal. July 3, 2013) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *see also, e.g.*, *Leonard v. CVS Pharmacy, Inc.*, No. 5:24-CV-06280-EJD, 2025 WL 2772598, at *5 (N.D. Cal. Sept. 29, 2025) (considering preemption on a motion to dismiss in the context of the FDCA).

## III. DISCUSSION

The Court begins by addressing Defendant's broadest argument: that Plaintiffs' claims are preempted under the FDCA. The Court then addresses Defendant's requests to dismiss particular claims and theories, as well as Plaintiffs' request for injunctive relief.

### A. Plaintiffs' Claim is Not Preempted by the FDCA

"Congress enacted the FDCA as a comprehensive federal scheme of food and drug regulation to ensure safety and proper labeling." *Leonard v. CVS Pharmacy, Inc.*, No. 24-cv-06280-EJD, 2025 WL 2772598, at *5 (N.D. Cal. Sept. 29, 2025). "In 1994, Congress passed the Dietary Supplement Health and Education Act ('DSHEA'), providing the FDA with regulatory authority over dietary supplements." *Gallagher v. Bayer AG*, No. 14-cv-04601-WHO, 2015 WL 1056480, at *3 (N.D. Cal. Mar. 10, 2015). "To avoid a patchwork quilt of conflicting state labeling laws, the FDCA includes a preemption provision that establishes a national and uniform standard for certain labeling statements." *Greenberg v. Target Corp.*, 985 F.3d 650, 655 (9th Cir. 2021); 21 U.S.C. § 343(a)(5).

Defendant argues that the FDCA preempts the claims at issue here, while Plaintiff argues it does not. Two issues are at the core of the parties' preemption dispute. First, is the statement "provides antioxidant benefits" appearing on the label for the turmeric capsules a "structure/function" claim under 21 U.S.C. § 343(r)(6) or a "nutrient content claim" governed by 21 U.S.C. § 343(r)(1)? Second, do Plaintiffs' claims go beyond the labeling requirements of the

relevant subsection, such that they are preempted?

**1. Defendant's Statement that the Turmeric Capsules "Provide[] Antioxidant Benefits" is an Implied Nutrient Content Claim**

Section 343(r)(1) permits a statement in labelling a food that either "expressly or by implication—(A) characterizes the level of any nutrient" in the food, but only if the statement complies with certain requirements set forth in Sections 343(r)(2). 21 U.S.C. § 343(r)(1). [3] Such statements are referred to as "nutrient content claims."[4] The Food and Drug Administration ("FDA") has promulgated regulations for nutrient content claims. 21 C.F.R. § 101.13. The regulations provide that an "express" nutrient content claim "is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1). By contrast,

> [a]n implied nutrient content claim is any claim that: (i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or (ii) Suggests that a food, because of its nutrient content, may be useful in maintaining healthy dietary practices, where there is also implied or explicit information about the nutrition content of the food (*e.g.,* "healthy").

21 C.F.R. § 101.13(b)(2). Additional "Specific Requirements for Nutrient Content Claims" are contained in 21 C.F.R. §§ 101-54–69.

Section 343(r)(6) permits "a statement for a dietary supplement" to be made if, in relevant part, it "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a nutrient or dietary ingredient," and meets the requirements of subsections

---

[3] Although Section 343(r)(1) applies to "labeling of [a] food," while Section 343(r)(6) applies to labeling "a dietary supplement," the FDCA states that "a dietary supplement shall be deemed to be a food within the meaning of this chapter" except for the purposes of certain paragraphs not at issue here. *See* 21 U.S.C. § 321(ff)(3). Neither party disputes that "nutrient content claims" can apply to dietary supplements.

[4] Subsection 343(r)(1)(B), permitting statements that "characterize[] the relationship of any nutrient" in the food "to a disease or a health-related condition[,]" governs what are known as "health claims," which are not at issue here.

(r)(6)(B)–(C). 21 U.S.C. § 343(r)(6). Such statements are referred to as "structure or function" claims. The FDA has also promulgated regulations for "Certain types of statements for dietary supplements," including "[p]ermitted structure/function statements." 21 C.F.R. § 101.93(f). These requirements, as relevant here, merely parallel and restate the statutory text. *Compare id. with* 21 U.S.C. § 343(r)(6)(A).

For the following reasons, the Court agrees with Plaintiffs' contention that Defendant's statement that the turmeric capsules "provide[] antioxidant benefits" is a nutrient content claim; specifically, the Court finds it is an implied nutrient content claim. *See* ECF No. 29 at 14–15.

As an initial matter, Plaintiffs' argument is well-taken that the phrase "provides [nutrient]" is considered a "Good Source" expression, *i.e.*, an express nutrient content claim that the product is a "good source" of the particular nutrient. *See* ECF No. 29 at 14 (citing 21 C.F.R. § 101.54(c)). But Defendant is right that the operative question here is "what is being provided?" As Plaintiffs' own authority suggests, for a claim to be an express nutrient content claim, the thing following "provides" must be a nutrient. *Cf. Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-02646-RMW, 2013 WL 675929, at *5 (N.D. Cal. Feb. 25, 2013) (analogizing the term "natural source of antioxidants" to "provides antioxidants," and finding it to be a nutrient content claim). Defendant argues that it claims its turmeric capsules "provide antioxidant *benefits*," not antioxidants, and that in at least one public 343(r)(6) response letter,[5] the FDA did not object to a manufacturer's intent to use "provides antioxidant protection" as a structure/function claim. ECF No. 30 at 9 (citing ECF No. 30-2 at 2–3).[6]

The Court agrees with Defendant that the statement "provides antioxidant benefits" does

---

[5] 21 U.S.C. § 343(r)(6) requires that, "[i]f the manufacturer of a dietary supplement proposes to make a [structure/function claim] in the labeling of the dietary supplement, [it] shall notify the Secretary [of Health and Human Services] no later than 30 days after the first marketing of the dietary supplement with such statement that such a statement is being made." The FDA, under the authority of the Secretary, may issue warning letters objecting to certain proposed statements.

[6] Defendant requests this Court takes judicial notice of exhibit B, the March 23, 2021 FDA warning letter to Market America, Inc. *See* ECF No. 31. Plaintiffs do not object to this request, and the Court GRANTS the request as to exhibit B because it is a government record, downloaded from and available at a government website, and its authenticity is not subject to dispute. For similar reasons, the Court GRANTS Defendant's request for judicial notice as to exhibits C–F.

not appear to be an express nutrient content claim. It is not a "*direct* statement about the level (or range) of a nutrient [*i.e.*, antioxidants[7]] in the food." *See* 21 C.F.R. § 101.13(b)(1) (emphasis added). But the Court agrees with Plaintiff that the statement is nonetheless an implied nutrient content claim. This is most clear from the text of the regulation: the statement "describes" the turmeric capsules "in a manner that suggests that a nutrient [*i.e.*, antioxidants]" are "present in a certain amount," or "[s]uggests that a food [*i.e.*, the capsules], because of its nutrient content, may be useful in maintaining healthy dietary practices, where there is also implied or explicit information about the nutrition content of the food (e.g., 'healthy')." 21 C.F.R. § 101.13(b)(2). The label also notes that turmeric "is an ancient Indian spice" and "[t]he [c]urcumin in [t]urmeric has antioxidant activity[.]" ECF No. 18-2 at 2. Indeed, although in the context of a summary judgment analysis and not a preemption argument, one court in this district found a similar phrase to be a nutrient content claim: "provide antioxidant health benefits." *Khasin v. R. C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2016 WL 4502500, at *1 (N.D. Cal. Aug. 29, 2016), *aff'd sub nom. Victor v. R.C. Bigelow, Inc.*, 708 F. App'x 333 (9th Cir. 2017) (granting judgment for defendant Bigelow because the plaintiff had failed to present evidence that the nutrient content claim at issue was misleading, failed to present evidence of damages, and lacked injunctive relief for standing).

Defendant's two arguments to the contrary are not persuasive. First, an FDA warning letter failing to opine on a manufacturer's intent to use a structure/function claim is not conclusive. An FDA warning letter is not binding on this Court and, while it may be persuasive, the FDA letter at issue here merely fails to object to the statement "provides antioxidant protection," without saying anything about the proposed claim. ECF No. 30-2 at 2–3. Without providing any explanation of its reasoning, the FDA letter is of limited persuasive value; for example, it is

---

[7] Neither party addresses whether it is odd to treat "antioxidants" as a nutrient. Plaintiffs' complaint does not state what "antioxidants" are, sometimes using it as an adjective ("antioxidant properties") and sometimes as a category of something not otherwise explained. *See, e.g.*, ECF No. 1 ¶ 30. But because both parties arguments treat "antioxidants" as though it were a nutrient, the Court adopts this framework. Moreover, although the Court understands antioxidants to be a category of chemical compounds found in various nutrients, the statutory definition may differ (*e.g.*, the FDA appears to use "calories" as a nutrient (21 C.F.R. § 101.13(b)(1))) and it is Defendant's burden on a motion to dismiss asserting an affirmative defense to show that, on the face of the complaint, Plaintiffs plead themselves out of a claim. *See Lovejoy*, 2013 WL 3360898, at *6 (quoting *Von Saher*, 592 F.3d at 969); *see, infra*, § III.A.2.

unclear how, if at all, the FDA viewed the relevance of the word "protection" (perhaps related to a specific bodily system, *e.g.*, the immune system) in its letter – a word that is not included on Defendant's label in this case. Second, Defendant points out that in its promulgating regulations on "Nutrient Content Claims Using the Term 'Antioxidant,'" (21 C.F.R. § 101.54(g)), the FDA explained that it "is not limiting truthful and nonmisleading statements about the properties or the effects of antioxidants"; accordingly, Defendant's statement about antioxidant "benefits" must not be a nutrient content claim. ECF No. 30 at 8 (citing 62 Fed. Reg. 49868–81 (September 23, 1997)). But in its clarification of "effects" the FDA makes clear it is referring to structure/function claims: claims describing "the effect of a nutrient or dietary ingredient on the structure or function of the body[.]" *Id.* And the Court does not agree that the phrase "provides antioxidant benefits" is a structure/function claim, because, as explained below, the term "benefits" standing alone is simply too vague and untethered from any "structure or function in humans." 21 U.S.C. § 343(r)(6).

The Court agrees with Plaintiffs that, in most cases (and as Defendant invokes here), structure/function claims must "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans or describe[] general well-being from consumption of a nutrient or dietary ingredient[.]" *See* ECF No. 30 at 9 (internal quotation marks omitted). Classic structure/function claims include: "calcium builds strong bones," "fiber maintains bowel regularity," and "antioxidants maintain cell integrity." ECF No. 29 at 15–16 (citing U.S. Food & Drug Admin., Structure/Function Claims, Mar. 28, 2024, https://www.fda.gov/food/nutrition-food-labeling-and-critical-foods/structurefunction-claims). Defendant's claim lacks any connection to the human body, instead being directed to vague "benefits." *See* ECF No. 18-2 at 2. Defendant's counterargument, that Plaintiffs' theory would foreclose statements such as "promote calmness and relaxation," "promotes sleep," and "provides antioxidant protection," overreaches. *See* ECF No. 30 at 10–11. "Calmness and relaxation" and "sleep" could qualify as specific functions of the human body; and "protection," could be construed as relating to the immune system. In any case, unlike Plaintiffs' citation to specific FDA guidance published on its website, Defendant's counterexamples are derived from proposed claims "submitted to the FDA" in

structure/function proposal letters, "to which the FDA had no objection." *Id.* at 11. As already noted, where the FDA does not explain its reasoning and merely fails to object, its warning letters—particularly when those letters do not address the specific language at issue in this case—are less persuasive.[8]

Finally, each party cites to *Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107 (N.D. Cal. 2022), and argues the case supports them. There, the Court found that the statement "Omega-3s (ALA) from Chia seeds to help your toddler get the most out of every bite" is a structure/function claim. *Id.* at 1118. Defendant argues that this shows the flaw in Plaintiffs' theory, because the nutrient (Omega-3s) was not tied to a specific bodily structure or process. ECF No. 30 at 11.[9] But although not explicit, the claim in *Sanchez* was tied to a specific bodily process, *i.e.*, the process of digestion. *See Sanchez*, 626 F. Supp. 3d at 1118. The Court thus agrees with Plaintiffs. In sum, while a structure/function claim need not explicitly mention a specific part of the human body or its function, it must be tied to one (or more) "structures" or "functions" of the human body – a vague reference to "benefits" is not enough. *See* 21 U.S.C. § 343(r)(6).

Accordingly, the Court finds that Defendant's statement that the turmeric capsule "provides antioxidant benefits" is not a structure/function claim but rather is a nutrient content claim.[10]

---

[8] Defendant's final effort to bolster this argument is its citation to a structure/function notification letter that it itself submitted to the FDA, proposing to use "provides antioxidant benefits" as a structure/function claim; the FDA did not object. ECF No. 30 at 11 (citing ECF No. 30-6)). Defendant argues that because the FDA has already "considered, and not objected to, th[e] very statement" at issue in this case, Plaintiffs cannot contend the statement is a nutrient content claim. *Id.* Defendant's argument wrong for several reasons. First, Defendant appears to suggest that, if it provides a notification of a statement to the FDA and the FDA does not object, the failure to object provides a safe harbor unreviewable by Courts. Defendant cites no authority for this position. Second, Defendant cannot seriously contend that every phrase it submitted is an approved "structure/function" claim; for example, it also submitted the phrase "Turmeric is an ancient Indian spice that is becoming a popular herbal supplement due to its antioxidant benefits," yet this statement plainly is not a structure/function claim. And third and relatedly, the FDA did not respond to Defendant at all – Defendant does not submit any FDA letter. So again, the FDA's reasoning is not before the Court.

[9] Notwithstanding the mention of "bite," it does not appear that the court in *Sanchez* was reading Omega-3s as being related to the structure of "teeth." *See Sanchez*, 626 F. Supp. 3d at 1118.

[10] Defendant raises FDCA preemption based on 21 U.S.C. § 343-1(a)(5), which preempts state labelling requirements for "any claim of the type described in section 343(r)(1)." Thus, to the

The Court next briefly addresses the remaining question of whether Defendant's labeling statement meets the requirements of 21 C.F.R. §§ 101.36 and 101.54(g), as Defendant argues summarily in the alternative. *See* ECF No. 30 at 10.

**2. Defendant Has Not Shown, on the Face of the Complaint, that the Statement at Issue Meets the Nutrient Content Claim Requirements**

Because the statement "provides antioxidant benefits" is an implied good-source nutrient content claim, it must meet the general "good source" requirements of 21 C.F.R. §§ 101.54(a) and (c), and the specific requirements for "nutrient content claims using the term 'antioxidant,'" 21 C.F.R. § 101.54(g). In their opposition to Defendant's preemption argument, Plaintiffs levy two challenges, though neither is well-developed: "the antioxidant in question must have an established Reference Daily Intake ('RDI') and the label must specify what ingredient, specifically, provides the antioxidants." ECF No. 29 at 15 (citing 21 C.F.R § 101.54(c)(1)). Defendant, responding equally briefly, argues that it has met the requirements because its label provides that the supplement contains 500 mg of turmeric and the regulations permit it to make nutrient content claims in such manner. *See* ECF No. 30 at 10 (citing). Defendant is correct that, as the FDA explained when proposing the regulation, the words "contains" and "provides," when used as "synonyms for 'good source,' . . . may be used with nutrients that do not have RDI's or DRV's when specific amounts are given for the nutrient." 60 Fed. Reg. 67176–84 ("RDIs" and "DRVs" are Reference Daily Intakes or Daily Reference Values, respectively).

But Defendant does not respond to Plaintiffs' argument that its label must state "what ingredient, specifically, provides the antioxidants," (ECF No. 29 at 15), and it is not readily apparent to the Court from the face of the complaint that it is turmeric, and not its bioactive compound curcumin, that provides the antioxidants at issue. *See* ECF No. 1. ¶ 2. Similarly, Plaintiffs' complaint alleges only that "curcumin provides antioxidant benefits" "***when absorbed by the body***," and it is not clear to the Court how this requirement interacts with the various other nutrient-content-claim regulations. *Id.* (emphasis added). Simply put, beyond Defendant's brief

---

extent Defendant's claim is *neither* a structure/function claim nor a nutrient content claim, the preemption analysis ends here, as Defendant has not raised another preemption argument.

argument that it states the amount of turmeric in the capsule, Defendant does not address any of the other requirements of the regulations for "good source" nutrient content claims or those about antioxidants. *See* ECF No. 29 at 15; ECF No. 30 at 10. As the Court already explained, it is Defendant's burden on a motion to dismiss asserting an affirmative defense to show that, on the face of the complaint, Plaintiffs plead themselves out of a claim. *See Lovejoy*, 2013 WL 3360898, at *6 (quoting *Von Saher*, 592 F.3d at 969); *see, infra*, § III.A.2. Defendant has not done so, and accordingly, its motion to dismiss on preemption grounds is DENIED.

### B. Plaintiffs' Claims Are Dismissed to the Extent They Rely on Statements Not Made by Defendant

Next, Defendant seeks dismissal of any claims premised upon "statements [it] does not make," *i.e.*, those going beyond the statement that its turmeric capsules "provide[] antioxidant benefits." ECF No. 18 at 23–25. Each Plaintiff alleges their own reasons for purchasing Defendant's turmeric capsules:

- Plaintiff Spencer "purchased the Turmeric Capsules to alleviate pain associated with past injuries," in reliance on "Nature Made's advertisements that the products he purchased were anti-inflammatory and contained antioxidants."
- Plaintiff Pilon "purchased the Turmeric Capsules to alleviate pain associated with past injuries, gout and arthritis," based on the same representations.
- Plaintiff Browne purchased the turmeric capsules "in reliance on Nature Made's advertisements that the products he purchased would reduce inflammation and provide antioxidants."
- Plaintiff Guenther purchased the turmeric capsules "in reliance on Nature Made's advertisements that the products []she purchased would reduce inflammation."

ECF No. 1. ¶¶ 17–19.

But as Defendant points out, in contrast to these varying reasons for purchase, the complaint only alleges one statement made by Defendant on its in-store label: the turmeric capsules "provide[] antioxidant benefits." ECF No. 18 at 23–25; *see, generally*, ECF No. 1. Defendant argues that there is no allegation of "reliance" for any Plaintiff who relied on

statements that the turmeric capsules would "alleviate pain" (Spencer, Pilon) or were anti-inflammatory or would reduce inflammation (Spencer, Browne, Guenther). ECF No. 18 at 23–25.

The California Plaintiffs do not directly address most of Defendant's argument, instead arguing that reliance is presumed under California consumer protection statutes where misleading statements are printed on labels. *See* ECF No. 29 at 23–24. But Defendant does not challenge all of Plaintiffs' claims, only the claims to the extent they are based on statements Defendant did not make. For example, the complaint alleges broadly that, "when absorbed by the body," curcumin "supports a healthy inflammation response, and improves joint and muscle health." ECF No. 1 ¶ 2. And the complaint points out that *other* turmeric capsules on the market make statements such as "[s]upports a healthy inflammation response" and "may support joint function." *Id.* ¶¶ 73, 75. But wherever Plaintiffs got this information, as confirmed by Plaintiffs' counsel at the hearing, the complaint does not allege that these statements were conveyed *by* the Defendant *to* the Plaintiffs, who acquired the turmeric capsules through in-person purchases at retail locations. It is axiomatic that Plaintiffs cannot bring deceptive advertising or similar claims against Defendant based on either general knowledge or advertising that they saw on *other* manufacturer's products. Plaintiffs' authority is not to the contrary. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (finding that plaintiffs who purchased pet food products at a premium price had sufficiently pleaded reliance where defendants' statements at-issue were on the labels of the "Prescription Diet," even in the absence of specific, subjective reliance allegations). Accordingly, Plaintiffs Spencer and Pilon's claims are DISMISSED to the extent they are based on reliance on "alleviate pain" or other statements that Defendant did not make.

As to New Jersey Plaintiff Guenther, the analysis differs in several respects. Plaintiffs point out that unlike California law, New Jersey law does not require reliance. *See, e.g.*, *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 919 (N.D. Cal. 2024) ("The New Jersey Consumer Fraud Act does not require proof of reliance' to state a claim." (internal quotation marks omitted)). But "[w]hile the element of traditional reliance required in a fraud case need not be proven in order to recover damages under the [N.J.]CFA, a private plaintiff must still prove a causal nexus between the alleged [misrepresentation] and his or her damages."

*Dabush v. Mercedes-Benz USA, LLC*, 874 A.2d 1110, 1121 (N.J. Superior Ct. App. Div. 2005). The Court agrees with Defendant that, even setting reliance aside, Plaintiffs cannot plausibly allege that Defendant caused Plaintiffs' injuries by statements that it did not make. And, unlike Spencer and Pilon, Guenther does not allege that she purchased the turmeric capsules for any reason beyond reducing inflammation. ECF No. 1 ¶ 19. Guenther's claims are therefore DISMISSED in their entirety, although the Court will grant leave to amend as indicated below.

Finally, the analysis as to New York Plaintiff Browne is similar to Guenther. That is, New York law, like New Jersey, does not require reliance but requires causation. *E.g.*, *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) ("Further, as we have repeatedly stated, reliance is not an element of a section 349 claim[.] . . . The plaintiff, however, must show that the defendant's 'material deceptive act' caused the injury." (internal quotation marks and citations omitted)). As with the other Plaintiffs, Defendant cannot have caused Browne's injury by statements it did not make. Thus, Browne's claims, too, must be DISMISSED to the extent they are based on reliance on "reduce inflammation" representations not made by Defendant.

In sum, Plaintiffs Spencer, Pilon, and Browne's claims are DISMISSED to the extent they are premised on statements not made by Defendant, and Plaintiff Guenther's claims are DISMISSED in their entirety. The Court GRANTS leave to amend to the extent any Plaintiff, including Guenther, can allege in good faith that Defendant made statements about the turmeric capsules alleviating pain or reducing inflammation.

**C. Plaintiffs Lack Standing to Pursue Injunctive Relief**

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Defendant argues that even if Plaintiffs claims otherwise survive, they lack standing to seek injunctive relief because Plaintiffs do not ask the Court to require Defendant to add an absorptive additive (*e.g.*, piperine) to its turmeric capsules, and Plaintiffs allege that they would not purchase the capsules without such additives. ECF No. 18 at 25–26; ECF No. 1 ¶¶ 16–19. Plaintiffs do not disavow these allegations, but argue that the injunction they seek is to remedy future deception, because Plaintiffs "will

continue to encounter Nature Made Turmeric Capsules—and the 'provides antioxidant benefits' claim on its label," and be confused "each time they shop for supplements at the retailers identified in the Complaint." ECF No. 29 at 26–27. Plaintiffs argue that the Ninth Circuit has found standing for such relief in an analogous case. *Id.* (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)).

In *Davidson*, the Ninth Circuit held as a matter of first impression (resolving a district court split) that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase," because the "threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future." *Davidson*, 889 F.3d at 969–70. In that case, the threat of future harm was plausible because the plaintiff:

> alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet"; "would purchase truly flushable wipes manufactured by [Defendant] if it were possible"; "regularly visits stores . . . where [Defendant's] 'flushable' wipes are sold"; and is continually presented with [Defendant's] flushable wipes packaging but has "no way of determining whether the representation 'flushable' is in fact true."

*Id.* The Ninth Circuit characterized this as "a close question," after observing that the plaintiff had "no way of determining whether the representation . . . [was] in fact true" without purchasing the wipes, returning home, and trying them out. *See id.*

Defendant argues that this case is different from *Davidson*, because Plaintiffs "need only inspect the ingredient list to" determine whether black pepper or some other additive is present to aid in absorption. *See* ECF No. 30 at 19. The Court agrees. As alleged in the complaint, such additives are included labels if they are present in the product – *e.g.*, in Costco's Turmeric supplement, CVS's Turmeric Complex supplement, and Walgreen's Turmeric Complex supplement. ECF No. 1. ¶¶ 73–75. By contrast, while the label for the turmeric capsules at issue has a "Supplement Facts" section and an "Other Ingredients" list, black pepper, piperine, or other additives are absent from these lists. *See* ECF No. 18-2 at 2. As a result, Named Plaintiffs do not face an imminent or actual threat of future harm. They do not have to purchase the turmeric

capsules, take them home, and try them to understand what they are buying. By merely reading the back labels in the store, Plaintiffs can determine which capsules have additives that aid in absorption, and which ones do not.

Plaintiffs' claims are DISMISSED with leave to amend to the extent they seek injunctive relief.

## IV. CONCLUSION

For the forgoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's motion. Plaintiffs' claims are DISMISSED with leave to amend to the extent they are based on statements not made by Defendant, and Plaintiffs' request for injunctive relief is DISMISSED with leave to amend to the extent Plaintiffs can allege that they face an imminent or actual threat of future harm.

If Plaintiffs wish to amend their complaint, they must do so **no later than December 7, 2026**. If Plaintiffs do not amend, Defendant's answer is due **no later than December 21, 2026**. The Court CONTINUES the initial case management conference to **February 9, 2026**.

**IT IS SO ORDERED.**

Dated: November 23, 2026

Noël Wise
United States District Judge